**JACKSONWHITE**
ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center Street, Suite 200
Mesa, Arizona 85201
Telephone No.: (480) 464-1111
Facsimile No.: (480) 464-5692
Email: centraldocket@jacksonwhitelaw.com
*Attorneys for Plaintiff*
By: Michael R. Pruitt, SBN 011792
    Email: mpruitt@jacksonwhitelaw.com
    Nathaniel J. Hill, SBN 028151
    Email: nhill@jacksonwhitelaw.com
    Grant S. Cragun, SBN 034332
    Email: gcragun@jacksonwhitelaw.com

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Desruisseau, <br><br> Plaintiff, <br><br> v. <br><br> Broadband Holdings, LLC, an Arizona Limited Liability Company, <br><br> Defendant. | Case No.: <br><br> **COMPLAINT** <br><br> (**Jury Trial Requested**) |

Plaintiff Anthony Desruisseau ("Plaintiff"), by and through his counsel undersigned, brings this lawsuit pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

## THE PARTIES

1. Plaintiff Desruisseau is, and at all relevant times to this action has been, a single man residing in Maricopa County, Arizona.

2. Defendant Broadband Holdings, LLC ("Broadband" or "Defendant") is an Arizona limited liability company with its principle place of business in Maricopa County, Arizona.

3. Under the FLSA, Defendant is an "employer" as defined by these statutes.

4. At all relevant times, Plaintiff was an "employee" of Defendant Broadband under the FLSA, 29 U.S.C. § 201, *et seq*.

5. At all material times hereto, Defendant acted in its own interest, through its agents and/or employees and is therefore subject to individual liability for the actions of those agents and/or employees under the FLSA.

6. Defendant directed and exercised control over Plaintiff's work and wages, at all relevant times, through an enterprise or an agent.

## JURISDICTIONAL ALLEGATIONS

7. Claims in this action include claims arising under the illegal employment actions of Broadband under the statutes of the United States involving violations of the FLSA's wage and hour provisions. Claims in this matter arise under federal statute, and thereby, this Court has original jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because events giving rise to the claims occurred in the State of Arizona within this District.

9. The United States District Court for the District of Arizona has personal jurisdiction because Defendant conducts business within this District and the actions giving rise to this Complaint occurred in this District.

10. As provided for by the FLSA, 29 U.S.C. § 216(b), this action is brought by Plaintiff for unpaid overtime wages, liquidated damages, attorneys' fees, costs, and interest under the FLSA.

11. The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Ark Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981). Under the FLSA, employers are required to pay all non-exempt employees one and one-half their regular rate of pay for all hours worked in excess of forty hours in a workweek. *See* 29 U.S.C. § 207.

12. Broadband is a covered employer and enterprise subject to the provisions of the FLSA since it is engaged in commerce and generates annual revenue in excess of $500,000.

13. During the relevant time period, Plaintiff was an employee of Broadband covered by the provisions and protections contained in the FLSA.

14. Plaintiff's job duties are such that he was engaged in commerce as defined by the FLSA.

**BACKGROUND FACTS**

15. At all material times, Defendant Broadband is in the cable installation industry, providing end-to-end cabling installations and maintenance services for video, voice, and data for large-scale residential and commercial buildings, digital conversions, and multi-dwelling units of all sizes.

16. Plaintiff was hired in February 2018 as a field technician for Defendant. Plaintiff's job duties included installing cable in buildings managed by Broadband, both residential and commercial, including expanding services at existing sites and installing at new construction sites. Plaintiff's position required him to travel throughout Arizona and into Nevada to various worksites.

17. Upon his hire, Plaintiff agreed to be paid at an hourly rate above minimum wage for all services performed for Broadband. Specifically, Plaintiff was hired at an hourly rate equivalent to $45,000 per year, plus a monthly $500 stipend for vehicle expenses. Beginning in 2019, Plaintiff's annual rate of pay was raised to $52,000.

18. Plaintiff worked for Broadband five days per week for the entire duration of his employment, typically working at least forty-five hours each week and often working over fifty hours each week.

19. At all relevant times, Plaintiff would begin his days as early as 5:00 AM either on site or at the shop, would receive new "on-call" tasks at late as 5:00 PM, and stay later completing on-call tasks. Plaintiff often went before 7:00 AM to purchase materials from Home Depot or other supply vendors for projects for that day. Plaintiff would rarely take a break for lunch and would often work as late as 10:00 PM on certain projects, including calling customers, preparing equipment, and arranging his schedule.

20. Despite Plaintiff's initial belief that he was a salary and overtime exempt employee of Broadband, Broadband treated him like a non-exempt employee.

21. For example, in May 2018, Plaintiff noticed that he received a four hour deduction in his paycheck for allegedly going home early. After Plaintiff complained to Broadband about the reduction, Broadband paid Plaintiff for the time Broadband had initially deducted from his paycheck.

22. Despite Broadband correcting this supposed mistake, Broadband repeated this conduct on several occasions, short-changing Plaintiff for time he allegedly did not work. Often times this was done by Broadband reducing Plaintiff's sick time and vacation hours without Plaintiff's knowledge.

23. At one point, Plaintiff was advised that he would be deducted $75 from his paycheck for allegedly missing equipment. This was simply a mistake due to DirecTV putting a $75 charge on the wrong account. In response to this notification of a deduction, Plaintiff reviewed his paychecks and discovered several improper deductions. Plaintiff discovered that there were improper deductions from his paycheck including, but not limited to, deductions from his vacation and sick leave accounts and half-day pay reductions.

24. Plaintiff spoke to office manager Sean Karlin about these deductions. Mr. Karlin responded that Plaintiff was a non-exempt hourly employee, not an exempt salaried employee. Mr. Karlin further stated that Broadband was permitted reduce Plaintiff's paychecks by the time he was not at work. Moreover, Mr. Karlin was not willing to discuss with Plaintiff the manner in which his pay was calculated or whether the deductions were appropriate.

25. In early September 2019, Plaintiff was expecting to go on a work assignment to Jacksonville, Florida. Considering the potential work significant time on this work trip, Plaintiff again requested that Defendant confirm whether he was an exempt or non-exempt employee. Defendant against refused to discuss the topic with Plaintiff and terminated Plaintiff's employment.

26. Plaintiff's request to determine his exempt or non-exempt status was a protected activity under the Fair Labor Standards Act. Plaintiff's termination was in direct retaliation for Plaintiff engaging in a protected activity regarding his exemption status.

27. Mr. Karlin advised Plaintiff in writing that he had been labeled a non-exempt hourly employee.

28. This designation was made despite Defendants failing to track the hours that Plaintiff worked and despite failing to compensate Plaintiff for overtime hours that he worked.

29. Upon information and belief, Plaintiff regularly worked at least 10 to 15 hours of overtime each week. Plaintiff was never compensated for this time worked.

30. Moreover, Broadband withheld $723.00 from Plaintiff's final paycheck purportedly for tickets Broadband purchased for Plaintiff to fly to Jacksonville that Plaintiff did not use.

31. Considering work performed at the beginning and end of each work day, plus travel time to and from job site locations, Plaintiff estimates that he was not credited for at least several hours of work each day.

32. The cumulative effect was that Plaintiff was not paid overtime for working more than forty hours in a workweek.

33. Defendant owes Plaintiff wages for each and every workweek during which he worked for Defendant for the entire duration of his employment, or for the applicable limitations period.

34. When an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

35. Defendant failed to regularly and accurately maintain the record of time for the entire duration of Plaintiff's employment with Defendant. As a result, Defendant's records of Plaintiff's time worked grossly understates the actual duration of time Plaintiff worked during the entire duration of his employment with Defendant.

36. Defendant neglected to pay Plaintiff overtime wages for all hours worked in excess of forty hours per week. Therefore, Defendant failed to pay Plaintiff overtime wages for all hours worked in excess of forty hours per workweek.

37. Furthermore, Defendant failed to compensate Plaintiff the applicable overtime wages for all hours worked in excess of forty in a given workweek, violating 29 U.S.C. § 207.

38. Plaintiff is a covered employee within the meaning of the FLSA.

39. Plaintiff was a non-exempt employee.

40. Defendant directed and exercised control over Plaintiff's work and wages, at all relevant times, through an enterprise or agent.

41. Due to Defendant's illegal wage practices, Plaintiff is entitled to recover from Defendant compensation for unpaid wages, an additional equal amount as liquidated damages, interest, and reasonable attorneys' fees and costs under 29 U.S.C. § 216(b).

42. Plaintiff is also entitled to recover emotional distress damages and punitive damages connected to his retaliatory termination. *See Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999).

## COUNT I

**Failure to Pay Overtime in Violation of the FLSA, U.S.C. § 201 *et seq*.**

43. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

44. Plaintiff was to be paid an hourly wage in exchange for services as an employee.

45. Plaintiff regularly performed work in excess of forty hours each week throughout his employment.

46. This work was performed at Defendant's direction and/or with Defendant's knowledge.

47. Defendant failed to comply with 29 U.S.C. § 207 because Plaintiff worked for Defendant in excess of forty hours per week, and Defendant failed to pay him for those excess hours at the statutorily required rate of one and one-half times his regular rate of pay as required by the FLSA.

48. Defendant willfully violated the FLSA by failing to pay Plaintiff all wages due including overtime premiums for all hours accrued beyond forty in a workweek.

49. None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one-and-one-half times the applicable hourly rate at which employees are employed are applicable to Defendant or Plaintiff.

50. The policy of not paying all overtime wages due was knowing, willful, not taken in good faith, and done with the full knowledge and consent of the management of Broadband.

51. Plaintiff is therefore entitled to compensation at the applicable overtime rate for all hours worked in excess of forty per week, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorneys' fees, and costs.

## COUNT II

### FLSA Retaliation in Violation of 29 U.S.C. § 15(a)(3)

52. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

53. The FLSA prohibits any person from discharging or in any other manner discriminating against any employee who complains of a violation of the act or causes to be instituted any proceeding under or related to the act.

54. Plaintiff engaged in protected activity when he (1) complained to Defendant about its unlawful failure to pay for all hours worked, including overtime owed pursuant to the FLSA, (2) discussed with Defendant's employees Defendant's unlawful failure to pay for all hours worked, including overtime owed pursuant to the FLSA, and (3) notified Defendant of its wage violations.

55. As a direct and proximate result of Plaintiff's complaints about Defendant's unlawful overtime and wage practices, Plaintiff had the adverse employment action of being removed from work by Defendant.

56. Defendant acted in retaliation when it removed Plaintiff from his job.

57. There is a causal connection between Plaintiff engaging in the protected activity and the adverse employment action of removing Plaintiff from work in that but for Plaintiff engaging in the protected activity, Defendant would not have ended Plaintiff's employment.

Plaintiff's protected activity was a motivating factor in the decision by Defendant to remove Plaintiff from work.

58. Defendant's actions were punitive, malicious, and in direct retaliation for his complaints of FLSA violations.

59. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered lost wages, emotional distress, embarrassment, and other economic and non-economic losses.

60. Defendant's conduct in taking adverse action against Plaintiff's employment was done with ill will, spite, malice, for the purpose of injuring Plaintiff, and with a complete indifference of Plaintiff's rights.

61. Defendant's conduct in taking adverse action toward Plaintiff's employment harmed Plaintiff and was malicious, oppressive, or in reckless disregard of his rights.

62. Defendant therefore should be required to respond to Plaintiff in the form of a punitive or exemplary damage award and emotional distress damage award under federal law.

**WHEREFORE**, Plaintiff demands judgment against Defendant, and prays this Court to:

a. Declare and find that Defendant violated overtime provisions of the FLSA, 29 U.S.C. § 207, by failing to pay proper overtime wages;

b. Award Plaintiff his unpaid overtime damages, to be determined at trial;

c. Award Plaintiff compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), to be determined at trial;

d. Award Plaintiff compensatory and liquidated damages under 29 U.S.C. § 216(b);

e. Award Plaintiff attorneys' fees and costs as allowed by 29 U.S.C. § 216(b);

f. Award Plaintiff emotional distress damages and punitive damages;

g. Award Plaintiff prejudgment and post-judgment interest as provided by law; and

h. Award Plaintiff such other relief as this Court deems fair and equitable, including injunctive relief.

**DATED** this 11th day of November, 2019.

**JACKSON WHITE**

/s/ Nathaniel J. Hill
By:   Michael R. Pruitt, SBN 011792
        Nathaniel J. Hill, SBN 028151
        Grant S. Cragun, SBN 034332
40 North Center Street, Suite 200
Mesa, Arizona  85201
*Attorneys for Plaintiff*